UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROGER MORRELL, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. _____ |
| § | |
| MED-SURGE ADVANCES, INC. § | |
| and MED-SURGE HOLDINGS, INC., § | |
| § | |
| Defendants. § | |

### PLAINTIFF'S ORIGINAL COMPLAINT AND
### REQUEST FOR DECLARATORY RELIEF

Plaintiff Roger Morrell ("Morrell") files this Original Complaint and Request for Declaratory Relief against Defendants Med-Surge Advances, Inc. and Med-Surge Holdings, Inc. (collectively, "Med-Surge") and states:

### I.

### PARTIES

1. Morrell, an individual person, is a citizen of the District of Columbia.

2. Defendant Med-Surge Advances, Inc., f/k/a Med-Surge Technologies, Inc. ("Med-Surge Advances") is a corporation organized under the laws of the State of Texas, and has its principal place of business in Dallas, Texas. Med-Surge Advances may be served by serving its registered agent, John R. Pearce, 2805 Dallas Parkway, Suite 230, Plano, Texas 75093.

3. Defendant Med-Surge Holdings, Inc. ("Med-Surge Holdings") is corporation organized under the laws of the State of Texas, and has its principal place of business in Dallas, Texas. Med-Surge Holdings may be served by serving its registered agent, John R. Pearce, 2805 Dallas Parkway, Suite 230, Plano, Texas 75093.

II.

## JURISDICTION

4. The Court has jurisdiction over the lawsuit under 28 U.S.C. § 1332(a)(1) because, as set forth in the preceding paragraphs, Morrell is a citizen of the District of Columbia and both Med-Surge Advances and Med-Surge Holdings are deemed "citizens" of Texas for purposes of diversity, and because the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

III.

## CONDITIONS PRECEDENT

5. All conditions precedent to the filing of this lawsuit have been performed and/or have occurred.

IV.

## FACTS

6. Med-Surge is a distributor of various medical supply products – chiefly, aesthetic laser equipment – for a variety of manufacturers.

7. Commencing in about July 2004, Morrell began serving as an independent

consultant selling medical products on behalf of Med-Surge. In that capacity, Morrell acted as an independent contractor, not an employee.

8. On or about January 20, 2005, Med-Surge and Morrell entered into an agreement (the "January 2005 Contract"), pursuant to which Morrell would become an at-will employee of Med-Surge on July 1, 2005. A true and correct copy of the January 2005 Contract is attached hereto as Exhibit A.

9. Under the terms of the January 2005 Contract, Morrell was to receive an annual salary of $60,000.00, paid semi-monthly. In addition, Morrell was to receive a commission based on the price of the products he sold.

10. In connection with the January 2005 Contract, Morrell and Med-Surge also executed a Non-Disclosure, Confidentiality, and Non-Compete Agreement (the "Confidentiality Agreement"), a true and correct copy of which is attached hereto as Exhibit C.

11. The Confidentiality Agreement contains two key provisions: Section 1, entitled "Non-Disclosure of Confidential Information," and Section 2, entitled "Non-Competition." Section 1 purports to restrict the disclosure of "Confidential Information," which expressly excludes information in the public domain or information received from a third-party. Section 2 of the Confidentiality Agreement purports to restrict Morrell from competing with Med-Surge "directly or indirectly in any way in the state of Texas."

12. Significantly, the Confidentiality Agreement provides that if "the Company terminates [Morrell's] employment for any reason without cause (including without

limitation a constructive termination) this agreement shall automatically terminate and be of no further force and effect."

13. Morrell continued his work as an independent sales representative for Med-Surge after signing the agreements on January 19, 2005. On July 1, 2005, Morrell began working as an employee of Med-Surge, pursuant to the January 2005 Contract.

14. On or about August 10, 2005, Med-Surge informed Morrell that it wanted Morrell to consider switching back to being an independent contractor, rather than an employee of Med-Surge. Med-Surge and Morrell, however, never reached any agreement regarding such an arrangement.

15. Morrell did not receive his $2,500 semi-monthly salary payment on August 15, 2005, as required by the terms of the January 2005 Contract.

16. When Morrell subsequently inquired about the non-payment of his salary, Med-Surge responded on August 17, 2005, by saying that it was finalizing a "new agreement" that would return Morrell to his former status as an independent sales representative. Med-Surge also said that it intended the "new agreement" to be effective as of August 1, 2005, and, therefore, it was not going to pay Morrell any salary for August. Thus, as of August 17, 2005, Med-Surge either actually or constructively terminated Morrell's employment.

17. Following Med-Surge's termination of Morrell's employment, and despite demand, Med-Surge has failed and refused, and continues to fail and refuse, to pay Morrell's salary from August 1-17, 2005. Furthermore, during the course of his work for Med-Surge,

Morrell earned certain commissions and incurred certain reimbursable business expenses that, as of the date of this Complaint, Med-Surge has not paid.

## V.

### FIRST CAUSE OF ACTION: DECLARATORY JUDGMENT

18. Morrell brings this claim for declaratory judgment under both Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201 and 2202.

19. As a result of the foregoing, a real and justiciable dispute exists between the parties regarding their respective rights and obligations under the January 2005 Contract and the Confidentiality Agreement.

20. Accordingly, Morrell requests that, upon trial hereof, the Court enter a judgment determining and declaring, inter alia:

    a. That Med-Surge terminated Morrell's employment without cause, either actually or constructively;

    b. That the Confidentiality Agreement is unenforceable, either in whole or in part;

    c. That Morrell has not breached or violated the January 2005 Contract or the Confidentiality Agreement; and

    d. Such other matters as may be necessary to adjudicate the parties' rights and responsibilities under the pertinent agreements.

## VI.

### SECOND CAUSE OF ACTION: BREACH OF CONTRACT

22. The January 2005 Contract required Med-Surge to pay Morrell a semi-monthly

base salary of $2,500.00 during his employment with Med-Surge, as well as to pay Morrell certain commissions.

23. Med-Surge failed to pay Morrell his salary for the period between August 1, 2005, and August 17, 2005, when it terminated Morrell's employment. Med-Surge therefore has breached the January 2005 Contract and is liable to Morrell in the amount of his unpaid salary.

24. Additionally, Med-Surge has failed to pay Morrell certain commissions and expenses, for all of which Morrell hereby sues.

## VII.

## ATTORNEYS' FEES

25. As a consequence of Med-Surge's breach of the January 2005 Contract, Morrell has been required to retain the undersigned counsel to bring this lawsuit. Morrell is entitled to recover from Med-Surge his attorneys' fees incurred herein.

## VIII.

## JURY DEMAND

26. Morrell demands a jury for all issues so triable. The appropriate fee has been paid herewith.

## IX.

## REQUEST FOR RELIEF

36. Morrell respectfully requests that the Court:

  a. declare the parties' rights and legal relations under the January 2005 Contract and Confidentiality Agreement;

  b. upon trial of this matter, enter judgment against Med-Surge on Morrell's cause of action for breach of contract;

  c. award Morrell his damages, including attorneys' fees, as well as his expenses, costs of court, and interest at the highest rate allowable; and

  d. grant all other relief, general or special, at law or in equity, to which Morrell may be entitled.

    Respectfully submitted,

    **ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**

    By: _/s/ Meredith A. Taylor_
    Meredith A. Taylor, #483585
    Hardy Vieux
    1801 K Street, N.W., Suite 1200
    Washington, D.C. 20006-1307
    (202) 775-0725 Telephone
    (202) 223-8604 Facsimile

    **FIGARI & DAVENPORT, L.L.P.**
    Parker D. Young, Texas Bar No. 22204050
    John M. Barcus, Texas Bar No. 24036185
    3400 Bank of America Plaza
    901 Main Street
    Dallas, Texas 75202
    TEL: 214-939-2000
    FAX: 214-939-2090

    **ATTORNEYS FOR PLAINTIFF**
    **ROGER MORRELL**

# EXHIBIT A

SEP-20-2005 06:07 AM   R.MORRELL                     202 298 7053                  P.02



January 19, 2005

## OFFER OF EMPLOYMENT

Mr. Roger Morrell
2238 39th Place, NW
Washington, DC 20007
(202) 293-3587

Dear Roger,

On behalf of Med-Surge Technologies, Inc (Med-Surge) ownership, management and all the team members who have had the opportunity to work with you as an independent contractor, I am pleased to extend an offer of employment for you to join the Med-Surge team. We are all looking forward to working with you as a key member of our direct sales team.

**Position Title:** Direct Sales Representative, **Territory:** Virginia, West Virginia, Delaware, Maryland, Washington DC, and Pennsylvania (excluding Pittsburgh, PA)

### COMPENSATION PACKAGE

**Base Salary:** Will be $2,500 semi-monthly which calculated on an annual basis is $60,000 per year, less payroll deductions and all required withholdings. You will be paid on the 15th and last day of each month.

**Commission Structure**
  **2005 Annual Quota - $2,000,000**
  Commissions that you are paid as an independent contractor within your assigned territory between January 1, 2005 and June 30, 2005 will be considered against your 2005 Annual Quota. Commissions will be calculated at the date of initial funding for any order.
  Commissions will be paid out on the 15th and last day of each month following Physician/client final signoff of delivery and acceptance, and if final funding is obtained 5 days prior to these payout dates.
  Commissions up to $2,000,000 will be 5% of sales, plus an additional pay out of 10% (for an aggregate of 15%) for sales above $2,000,000. All discounting of equipment sold, trade-ins, value added service discounts and rebates will be deducted from sales price of equipment prior to commission calculation and must be approved by MedSurge Management prior to presentation to any client until such time as a specific policy can be developed. Some of these issues may require shared cost between the sales representative and Med-Surge.
  This commission structure is subject to change and may be adjusted by Med-Surge with a 60-day written notification.

**Expenses to be reimbursed by Med-Surge**
  Car Allowance of $500 monthly.
  Phone (Land Line, Data and Mobile Phone) allowance $350 Monthly

14850 Quorum Drive, Suite 120, Dallas, TX 75254 ▪ Phone: 972-720-0425 ▪ Fax: 972-720-0427
www.medsurgetech.com

SEP-20-2005 06:07 AM    R. MORRELL                          202 296 7953                    P.03



**Benefits:** You will be offered Health and Dental Insurance and other such Benefits as may be authorized and approved for all employees of the Company. You will be informed of benefit programs as they become available to employees and as eligibility is defined. 10 days vacation annually that will accrue at a rate of .85 days monthly beginning until your max is met based upon your official start date.

**Equity Incentive:** On the date you sign this agreement, you will be granted 10,000 shares of stock options effective retroactively as of February 1, 2005, at which time your vesting will begin, and with a strike price of $3.33, based upon the valuation of the Company as of January 19, 2005. Such options shall vest at 20% per annum, 20% of which are fully vested as of January 31, 2006.

**Start Date:** July 1, 2005.

As a Med-Surge employee, you will be expected to abide by all Company rules and regulations made available to you, and sign and comply with the attached Non-Disclosure, Confidentiality and Non-Compete Agreement, which prohibits unauthorized use or disclosure of our client and proprietary information. Furthermore, in accepting our offer, you acknowledge that you are not under any agreement that would prevent you from fulfilling the duties and responsibilities set forth in this employment letter.

You may terminate your employment with Med-Surge at any time and for any reason or for no reason simply by notifying the company. Likewise, Med-Surge may terminate your employment at any time and for any reason or for no reason, with or without cause or advance notice. This "at-will" employment relationship cannot be changed except in writing signed by an authorized Med-Surge officer. If you leave Med-Surge and owe any money, you authorize Med-Surge to make the applicable deductions from any amounts Med-Surge owes you. Participation in any of our Company programs is not to be regarded as a guarantee of continued employment for any particular period of time. In addition, Med-Surge may change your position, duties, work location, compensation and benefits from time to time, as it deems necessary.

As required by law, this offer is subject to satisfactory proof of your right to work in the United States. Please note that because of regulations adopted in the Immigration Reform and Control Act of 1986 (IRCA), we will require that you present documentation demonstrating that you have authorization to work in the United States on your first day at Med-Surge. Your employment is also contingent upon verification of your references, of the background and educational information you have supplied to the Company and on your resume, your completion of a drug screen to the Company's satisfaction, as well as your acknowledgement and your agreement to abide by the Company's written rules of conduct and business ethics. These documents will be presented during your orientation and as they are defined by the Med-Surge. By signing this letter and the attached FAIR CREDIT REPORTING ACT INVESTIGATIVE CONSUMER REPORT DISCLOSURE AND AUTHORIZATION form, you authorize Med-Surge to contact references and past employers and to otherwise assess your background, and you hereby waive any and all claims related to our evaluation.

14850 Quorum Drive, Suite 120, Dallas, TX 75254 • Phone: 972-720-0425 • Fax: 972-720-0427
www.medsurgetech.com

SEP-20-2005 06:08 AM  R. MORRELL                        202 298 7853                P.04



This letter, together with other agreements referenced in this letter, forms the complete and exclusive statement of your employment agreement with Med-Surge after July 1, 2005. The employment terms in this letter will supersede any other terms of employment, employment agreements or promises of employment made to you by anyone, whether oral or written.

As acceptance of the employment terms described above, please sign and date this letter identifying your agreement with the start date and return the originals of all documents in this package to me by January 21, 2005, at the Company's address listed below. The additional copy of this offer letter may be retained for your records.

Med-Surge is moving full speed ahead and we look forward to having you on our team to help us as we achieve success together.

Very truly yours,

Scott Day                                  Date  1/20/05
President
Med-Surge Technologies, Inc

Accepted by:

Roger W. M——                               Date  1/19/05

Agreed Start Date:  7/1/05

Enclosures

14850 Quorum Drive, Suite 120, Dallas, TX 75254 • Phone: 972-720-0425 • Fax: 972-720-0427
www.medsurgetech.com

# EXHIBIT B



## Med-Surge Holdings
## NON-DISCLOSURE, CONFIDENTIALITY AND NON-COMPETE AGREEMENT

THIS NON-DISCLOSURE AND NON-COMPETE AGREEMENT (this "Agreement") is made and entered into as of the 15th day of January, 2005, between Med-Surge Holdings, Inc and all subsidiaries ("Disclosing Party") and the undersigned recipient ("Recipient").

A. Recipient is engaged or will be engaging as an employee with Disclosing Party and will have access to certain confidential information regarding products, services, marketing and research. The Disclosing Party considers this information to be proprietary and confidential (the "Confidential Information").

B. Recipient acknowledges that the Confidential Information belongs solely to Disclosing Party, and that use of the Confidential Information by any person or entity other than Disclosing Party would be damaging to Disclosing Party.

In consideration of Recipient's receipt of the Confidential Information and other good and valuable consideration, the sufficiency of which is hereby acknowledged, Recipient and Disclosing Party agree as follows:

1. **NON-DISCLOSURE OF CONFIDENTIAL INFORMATION.**

   a. *Non-Disclosure.* Recipient shall not, at any time, directly or indirectly use or disclose to anyone any Confidential Information, except to the extent reasonably necessary in the following circumstances: (i) in promoting the business proposition of Disclosing Party; in the event that Recipient becomes involved with Disclosing Party in developing the concept, but then only either under protection of a similar confidentiality agreement and to people with a need to know; (ii) if Recipient is authorized in writing by Disclosing Party; or (iii) if Recipient is required by law to do so.

   b. *Copies.* Recipient will not copy any Confidential Information, including, but not limited to Disclosing Party's business plan, onto diskettes and electronic media, nor create documents or files containing Confidential Information.

   c. *Return of Information.* Upon the termination of any business relationship between the parties for any reason, Recipient will immediately return to Disclosing Party all writings, data (on any medium), and documents containing any Confidential Information which are then in Recipient's possession or in the possession of any person or entity that is associated with or related to Recipient in any manner.

   d. *No Use of Information.* Recipient shall not use any Confidential Information in any way for Recipient's own benefit or for the benefit of anyone other than Disclosing Party.

   e. *Scope.* This Agreement shall not relate to information which is already in, or later becomes part of, the public domain, or to information received from a third party which originated such information.

1

2. **NON-COMPETITION.**

a. *Covenant Not to Compete.* Recipient agrees that during employment with the Company, and for a period of one (1) year following the termination of such employment, Recipient will not engage in the business of selling any products for the manufacturers represented by the Company, will not engage in any employment, business or activity that is in any way competitive with the business or generally announced business of the Company (or its subsidiaries, affiliates, successors or assigns), or proposed business of the Company (or its subsidiaries, affiliates, successors or assigns), and Recipient will not assist any other person or organization in competing with the Company (or its affiliates', successors' or assigns') or in preparing to engage in competition with the Company (or its affiliates', successors' or assigns') (collectively, the "Restricted Activities"). For purposes of this Agreement, Recipient and the Company agree that Recipient may not engage in any Restricted Activities directly or indirectly in any way in the state of Texas. Recipient and the Company further agree that this prohibits Recipient from engaging in such Restricted Activity anywhere in the world if the effect of such Restricted Activity is to permit Recipient of a competitor to compete directly or indirectly in any way with the Company (or its affiliates, successors or assigns) in the state of Texas. Recipient and the Company agree that the assertion or existence of any claim by Recipient against the Company shall not be a defense to the enforcement of this Section 2 by injunction or otherwise. If the Company terminates Recipient's employment for any reason without cause (including without limitation a constructive termination) this agreement shall automatically terminate and be of no further force and effect.

b. *Receipt of Confidential Information.* Disclosing Party agrees to provide Recipient with Confidential Information during the term of this Agreement, and Recipient acknowledges and agrees that receipt of such Confidential Information and the unique professional growth opportunities Recipient will receive through exposure to the Confidential Information constitute fair and adequate consideration for entry into this Agreement. Recipient further acknowledges and agrees that the restrictions set forth above are ancillary to an otherwise enforceable agreement and supported by independent valuable consideration as required by TEX. BUS. & COMM. CODE ANN. § 15.50. Recipient further acknowledges and agrees that the limitations as to time, geographical area, and scope of activity to be restrained by this Section 2 are reasonable and acceptable to Recipient, and do not impose any greater restraint than is reasonably necessary to protect the goodwill and other business interests of the Company.

c. *Scope of Covenant.* This covenant not to compete applies to activities in all areas of the world.

3. **ENFORCEMENT.**

a. *Remedies.* Recipient acknowledge that Recipient's obligations specified in Section 1 (entitled "Non-Disclosure of Confidential Information") and Section 2 (entitled "Non-Competition") are legally binding and enforceable, and that Recipient's violation of those obligations will result in irreparable harm and damage to Disclosing Party. In the event that Disclosing Party brings any action or proceeding to enforce any provision of this Agreement, Recipient waives, and agrees that Recipient will not assert in such action, the claim or defense that an adequate remedy at law is available to Disclosing Party. The remedies available to Disclosing Party for any breach of this Agreement by Recipient shall be cumulative, and an award of injunctive relief shall not preclude an award to Disclosing Party of monetary damages or other relief.

4. **MISCELLANEOUS.**

a. ***Disclosure to Other Parties.*** Disclosing Party has the right to disclose the obligations imposed upon Recipient by this Agreement to Recipient's future or prospective employers and/or business associates.

b. ***Complete Agreement.*** This Agreement contains the complete understanding between Recipient and Disclosing Party with respect to the subject matter hereof and may not be amended or terminated except by a written agreement signed by both Recipient and Disclosing Party.

c. ***Governing Law.*** This Agreement shall be governed by, and construed in accordance with, the laws of the State of Texas.

d. ***Waiver.*** No failure by Disclosing Party to take any action or assert any right hereunder shall be deemed to be a waiver of such right. The failure by Disclosing Party to take any action following a breach of any provision of this Agreement by Recipient shall not operate or be construed as a waiver of any subsequent breach by Recipient.

e. ***Severability.*** In the event that any portion, including any part of a section or subsection, of this Agreement is held to be invalid and unenforceable for any reason, the remaining portions of this Agreement, including the remainder of any section or subsection, shall be severable and shall remain in full force and effect to the full extent possible under applicable law. If any provision of this Agreement is deemed by a court to be overly restrictive, such provisions shall be enforced only to the extent deemed reasonable by such court.

f. ***Successors and Assigns.*** This Agreement shall be binding upon Recipient, Recipient's heirs, executors, successors, assigns, and administrators and shall inure to the benefit of Disclosing Party, its successors, and assigns.

IN WITNESS WHEREOF, this Agreement has been executed as of the date first above written.

RECIPIENT                                            DISCLOSING PARTY

_____                            _____
(Signature)                                          (Signature)

Direct Sales Representative                          President
Title                                                Title

Roger Morrell                                        Scott Day
Print Name                                           Print Name

3